UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARIE ELAINE GILLIT,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 2:19-cv-1542-KJN

ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

(ECF Nos. 16, 19)

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act.[1] In her summary judgment motion, plaintiff contends the Administrative Law Judge erred in: (A) assessing all cognitive impairments at steps two and three, alongside the opinion of a psychological examiner; (B) failing to provide specific and legitimate reasons regarding the opinions of a treating psychiatrist and examining physician; and (C) failing to offer clear and convincing reasons for discrediting plaintiff's symptom testimony. The Commissioner opposed, and filed a cross–motion for summary judgment.

The court herein DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15), and both parties consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 11.)

## I. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS[2]

On October 24, 2013, plaintiff applied for Supplementary Security Income and Disability Insurance Benefits, stating she was disabled due to "anxiety, depression, migraines, insomnia, right side in pain." (Administrative Transcript ("AT") 24, 207, 213, 313-48.) Plaintiff's application was denied initially and again upon reconsideration. (AT 207-18; 221-33.) Plaintiff, aided by an attorney, sought review of these denials with an Administrative Law Judge ("ALJ"). (AT 234-35.) The ALJ issued a decision unfavorable to plaintiff, but this court found the ALJ's discussion of plaintiff's medical records and symptom testimony deficient, thus remanding for further proceedings. See Gillit v. Berryhill, No. 2:17-CV-01126-AC, 2018 WL 4538274 (E.D. Cal. Sept. 21, 2018). On remand, the ALJ held a hearing on January 15, 2019, wherein plaintiff testified about her conditions, and a vocational expert ("VE") testified regarding the ability of a person with plaintiff's impairments to perform various occupations. (AT 697-735.)

On May 13, 2019, the ALJ issued a decision determining that plaintiff was not disabled from her onset date through her date last insured. (AT 676-87.) As an initial matter, the ALJ determined that plaintiff met the insured status requirements through June 30, 2013. (AT 679.) At step one, the ALJ concluded plaintiff had not engaged in substantial gainful activity since her

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571—76; Bowen v. Yuckert, 482 U.S. 137, 140—42 (1987). The following summarizes the sequential evaluation:

> **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> **Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

alleged onset date of April 10, 2012. (Id.) At step two, the ALJ determined plaintiff had the following severe impairments: lumbar degenerative disk disease, right elbow cubital tunnel syndrome, carpal tunnel syndrome, anxiety disorder, mood disorder, and alcohol abuse in remission. (Id.) The ALJ found plaintiff's "migraines, insomnia, [and] nerve disorder" to be non-severe. (Id.) At step three, the ALJ determined plaintiff's severe mental impairments were "mild" to "moderate," and did not meet or medically equal the severity of an impairment listed in Appendix 1. (Id.) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1). The ALJ then found plaintiff had the residual functional capacity ("RFC") to perform less than a full range of light work, except that:

> [She] is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; is limited to standing-walking in combination for six hours out of an eight-hour day; is limited to occasionally bending and stooping; is limited to frequently handling and fingering with the right upper extremity; is limited to noncomplex and routine tasks in low stress work environment defined as only occasional decision making or changes in work setting; and is limited to occasional public and coworker contact.

(AT 681.) In reaching this conclusion, the ALJ stated she considered those of plaintiff's intense, persistent, and limiting symptoms that were consistent with the medical evidence and opinions of plaintiff's doctors—including examining psychologist Dr. Stenbeck, treating psychiatrist Dr. Javeed, and examining physician Dr. Sharma. (AT 681-85.) The ALJ assigned great weight to Dr. Stenbeck's "moderate" assessments (AT 684), "little weight" to Dr. Javeed's more-restrictive mental limitations (id.), and "less weight" to Dr. Sharma's physical limitation to essentially sedentary work. (AT 683). The ALJ also discounted plaintiff's symptom testimony as inconsistent with her "sporadic treatment" and daily activities. (AT 682, 83.) The ALJ concluded at step four that plaintiff was unable to perform past relevant work, but that there were jobs existing in significant numbers in the national economy she could perform. (AT 685-86.) Thus, the Commissioner determined plaintiff was not disabled. (AT 686.)

Plaintiff then filed this action requesting judicial review of the Commissioner's final decision; the parties filed cross–motions for summary judgment. (ECF Nos. 1, 16, 19, 22.)

///

## II. LEGAL STANDARD

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

## III. ISSUES PRESENTED

Plaintiff argues the ALJ erred in failing to: (A) assess whether plaintiff had an intellectual or neurocognitive disorder at steps two and three, and correspondingly assess the examination report of psychologist Dr. Stenbeck regarding plaintiff's psychosis and intellectual impairments; (B) provide specific and legitimate reasons for discounting the findings and opinions of (1) treating psychiatrist Dr. Javeed regarding plaintiff's psychosis and intellectual impairments, and (2) examining physician Dr. Sharma's opinion that plaintiff be restricted to sedentary work; and (C) provide clear and convincing reasons for discrediting plaintiff's symptom testimony. (ECF No. 16 at 12-18.) Plaintiff seeks a remand for benefits. (Id. at 18.)

The Commissioner disagrees, arguing the decision sufficiently details evidence needed to support the ALJ's rejection of: (A) any other severe impairments at steps two and three, alongside her assessment of Dr. Stenbeck's findings; (B) Dr. Javeed's "check-box" report on plaintiff's mental abilities and Dr. Sharma's opinion assigning more-restrictive physical limitations; and (C) plaintiff's subjective symptom testimony due to her medical non-compliance, active search for work, daily activities, and the record as a whole. (ECF No. 19.) Thus, the Commissioner contends the decision as a whole is supported by substantial evidence, which should result in affirmance. (Id.)

## IV. <u>DISCUSSION</u>

**A. ALJ's error at steps two and three was harmless, as the RFC relied on Dr. Stenbeck.**

Plaintiff challenges the ALJ's assessment regarding the severity of certain of her mental impairments at steps two and three. Specifically, plaintiff argues the medical evidence should have given rise to a discussion by the ALJ at step two concerning Dr. Stenbeck's diagnostic impressions of "Psychotic Disorder [Not Otherwise Specified]" ("NOS") and "[Rule Out] Cognitive Disorder NOS." (AT 1340-41.) Plaintiff argues the ALJ should have taken into account the scores from Dr. Stenbeck's cognitive testing of plaintiff during the step two analysis. (AT 1337-40.) Plaintiff also argues this medical evidence should have given rise to a discussion at step three under listings 12.05B (intellectual disorder) or 12.02 (neurocognitive disorders). <u>See</u> 20 C.F.R. Part 404, Subpart P, Appendix 1. Finally, plaintiff argues the ALJ mischaracterizes Dr. Stenbeck's report and findings.

<u>Legal Standard</u>

Under the Commissioner's regulations, an impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1290 (9th Cir. 1996). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." <u>Id.</u>

At step three, a claimant can show an impairment matches a listing by meeting "*all* of the specified medical criteria," or through equivalence (i.e. an unlisted impairment or combination of impairments) by presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530-31 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." <u>Id.</u> at 531. A determination of medical equivalence must rest on objective medical evidence. <u>See</u> <u>Lewis v. Apfel</u>, 236 F.3d 503, 514 (9th Cir. 2001); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999); <u>see also</u> 20 C.F.R. § 404.1529(d)(3) ("In considering whether

your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment."). "The mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985).

Any error in failing to include an impairment at steps two or three may be harmless where the limitation posed by the omitted impairment was considered at a later step. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (harmless error where ALJ discussed evidence related to an omitted impairment and "[t]he decision reflects that the ALJ considered any limitations posed by [the omitted impairment at a later step]."). The claimant bears the burden of proof at steps two and three. Bowen, 482 U.S. at 146 n.5; Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Analysis

Here, the ALJ determined plaintiff had the severe impairments of anxiety disorder and mood disorder, and the non-severe impairment of migraines, insomnia, nerve disorder, and chronic pain. (AT 679.) However, as plaintiff rightly notes, the ALJ failed to mention Dr. Stenbeck's impressions of psychotic and cognitive disorders (AT 1340-41), as well as the multiple scores from Dr. Stenbeck's cognitive testing of plaintiff (AT 1337-40). Thus, the Commissioner's argument that plaintiff is merely attempting to obtain a remand for "further relevant development of her background" is unpersuasive. This evidence already exists, is in the record, and the ALJ likely should have engaged in a discussion of whether listings 12.05B (intellectual disorder) or 12.02 (neurocognitive disorders) were met.

However, because the ALJ found another mental impairment to be severe at step two (namely anxiety and mood disorders), then considered certain listings corresponding to those disorders at step three, then formulated an RFC with Dr. Stenbeck's impressions and findings in mind, this error is harmless. Lewis, 498 F.3d at 911; see also, e.g. Gilder v. Berryhill, 703 Fed. Appx. 597, 598 (9th Cir. 2017) (finding alleged error — ALJ's ignoring of impairment at step

three — harmless where ALJ considered the impairment when crafting RFC); Webster v. Comm'r, 2013 WL 3745618, at *8 (E.D. Cal. July 15, 2013) (finding no prejudicial error where the ALJ ignored doctor's diagnosis of psychosis at step two, but considered it when devising RFC).

Plaintiff is concerned that the ALJ's failure to explicitly mention the intelligence tests, the diagnostic impression of psychosis, and listings 12.05B and 12.02 leads to a failure to issue a "promissory note to consider again their possible combined effect, with the severe impairments, in determining RFC." (ECF No. 22 at 2.) Plaintiff relies on Hill v Astrue, wherein the Ninth Circuit found reversible error in the ALJ's failure to address a particular disorder at steps two or three — which left the RFC "incomplete, flawed, and not supported by substantial evidence in the record." 698 F.3d 1153, 1161 (9th Cir. 2012). Here, however, it appears the ALJ did consider the limitations imposed by plaintiff's mental impairments — including those not explicitly mentioned in steps two or three — when formulating the RFC. Most persuasively, the ALJ relied on Dr. Stenbeck's report, assigning it "great weight." (AT 684.) This report not only listed Dr. Stenbeck's diagnostic impressions, general observations, and plaintiff's test scores (as well as plaintiff's background, medical history, and symptom statements), but also recorded the doctor's detailed functional assessment of plaintiff's abilities based on these findings. (AT 1334-42.) Dr. Stenbeck found plaintiff's prognosis to be "fair, with comprehensive mental health services." (AT 1341.) Though the doctor noted "psychotic disorder, NOS," she found:

> [Plaintiff] is easily overwhelmed and is likely to have reduced capacity to deal with stressful environments. Due to anxiety and ineffective interpersonal skills she may encounter some difficulty when facing work conflict with coworkers and/or supervisors when receiving criticism or work related reprimands. These symptoms are not likely to abate within a twelve-month period but may show some mild improvement with continued comprehensive mental health services.

(Id.) Though Dr. Stenbeck had a bevy of intellect-based test results at the ready, she found:

> It is possible that with improvement in her psychological functioning she will show improved cognitive functioning. Based on her performance today she will benefit from having new information presented in simple, single steps and presented in a

> visual format due to stronger non-verbal reasoning abilities. She will also likely have difficulty with completing tasks consistently and will require supervision for safety related tasks due to problems with memory and sustained mental focus.

(Id.) These paragraphs do not describe findings from a physician indicating a belief that plaintiff is disabled due to her mental impairments. Rather, they demonstrate Dr. Stenbeck's belief that, with the proper workplace restrictions, proper supervision, and "comprehensive mental health services," work would not be precluded. (Id.) Leaving no doubt as to her conclusions, Dr. Stenbeck then provided a list of separate "work-related abilities," finding (relevantly):

> 1. With performing simple and repetitive tasks, the claimant is not significantly limited due to no indication that claimant cannot complete basic tasks.
>
> 2. With performing detailed and complex tasks, the claimant is moderately limited due to difficulties with concentration and memory. She would benefit from having complex tasks broken into more manageable single step items.
>
> 3. With maintaining regular attendance in the work place, the claimant is moderately limited due to report of anxiety in social situations and observations during this exam of distress.
>
> 4. With ability to perform work activities on a consistent basis, the claimant is moderately limited due to problems with attention and her tendency to become easily overwhelmed interfering with reliability of task completion.
>
> 5. With ability to perform work activities without special or additional supervision, the claimant is mildly to moderately limited due to likelihood of mental health symptoms interfering with work; it is probably that she will need emotional support during the work day.
>
> 6. With ability to complete a normal workday or workweek without interruptions resulting from the claimant's psychiatric condition, the claimant is moderately limited due to observations during this exam, mood symptoms, psychosis and limited coping abilities that occur most days of the week and are likely to be exacerbated in a stressful work environment.
>
> 7. With ability to accept instructions from supervisors, the claimant is moderately limited due to her anxious symptoms and paranoia she is sensitive to negative criticism from others. She would require gentle and supportive feedback from supervisors.
>
> 8. With ability to interact with coworkers and with the public, the claimant is moderately limited. Due to paranoia and symptoms of anxiety she would likely be uncomfortable interacting with others

> in a work setting.
>
> 9. With ability to deal with the usual stresses encountered in competitive work environment, the claimant is moderately limited. Severe work stress is likely to worsen claimant's condition.

(Id. at 1341-42, emphasis added.[3]) As can be seen, Dr. Stenbeck — in full possession of the relevant medical information plaintiff claims was ignored — found plaintiff at best to be moderately limited in her ability to work. See, e.g., Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir. 2007) (noting that the Ninth Circuit has "not previously held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work . . . ."). Thus, the ALJ's analysis of Dr. Stenbeck's report is not a "radical revision," as plaintiff claims, but an accurate assessment of Dr. Stenbeck's findings. The ALJ heavily relied on Dr. Stenbeck's opinions in formulating plaintiff's RFC (AT 684) in limiting plaintiff to "noncomplex and routine tasks in low stress work environment defined as only occasional decision making or changes in the work setting" and "occasional public and coworker contact" (AT 681). Plaintiff is correct that Dr. Stenbeck did not use those specific phrases in the RFC, but it is for the ALJ to translate the medical and opinion evidence into a claimant's RFC. 20 C.F.R. § 404.1546(b); Rounds v. Comm'r of Social Sec., 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). As to the reasonable relation between the RFC and Dr. Stenbeck's assessments, moderate limitations in performing detailed and complex tasks (work-related ability #2), maintaining consistency in tasks (#4), and working without special supervision (#5) logically correlate with "noncomplex and routine tasks"; low stress work (#6, 9) that requires little negative feedback (#7) logically

---

[3] The court has reproduced substantial portions of Dr. Stenbeck's report in this order to demonstrate a particular point. Throughout her briefs, plaintiff offers scathing critiques of the ALJ's decision, often in less-than-flattering terms. (See, e.g., ECF No. 16 at 9 (accusing the ALJ of being "guilty of gross obfuscation."); 12-13 (referencing the ALJ's "utter obliviousness to [testing] numbers," "defective and dubious" rationale, "radical revision" of Dr. Stenbeck's report," and attempt to "wilfully [sic] misinterpret[]" Dr. Stenbeck.); ECF No. 22 at 5 (likening the ALJ's "expropriation" of Dr. Stenbeck to a character in a children's novel); 7 (referencing the Commissioner's "unabashed[]" assumptions); 11 (accusing the ALJ of "traducing" plaintiff). However, it appears the ALJ relied on Dr. Stenbeck's own assessments of plaintiff's abilities in crafting the RFC. Thus, plaintiff's cursory, bombastic, and quasi-ad-hominem attacks on the ALJ and Commissioner are misplaced—and are not well taken.

correlates with the ALJ's assignment of a "low stress job"; and any "anxiety in social situations" (#3) or difficulty interacting with others (#8) logically correlates with "occasional public and coworker contact."

Thus, Hill is distinguishable, and the ALJ's failure to discuss Listings 12.02 and 12.05 was harmless due to the ALJ's incorporation of Dr. Stenbeck's recommendations, which were based on the diagnoses and test scores, into plaintiff's RFC. Lewis, 498 F.3d at 911; see also, e.g., Davis v. Colvin, 2015 WL 10737612, at *5 (D. Nev. Apr. 20, 2015) (finding a panic disorder diagnosis did not equate to a limitation on claimant's ability to perform basic work activities, and RFC sufficiently accounted for disorder in RFC via limitation to simple tasks and instructions).

**B. The ALJ provided specific and legitimate reasons to discount two doctors.**

Plaintiff contends the ALJ failed to provide specific and legitimate reasons for discounting the opinions of two other doctors: (1) treating psychiatrist Dr. Javeed, regarding plaintiff's alleged psychosis and intellectual impairments; and (2) examining physician Dr. Sharma's opinion that plaintiff be restricted to sedentary work.

Legal Standard

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Holohan v. Massanari, 246 F. 3d 1195, 1201–02 (9th Cir. 2001); Lester v. Chater, 81 F. 3d 821, 830 (9th Cir. 1995). Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion. Holohan, 246 F. 3d at 1202.

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. Lester, 81 F. 3d at 831. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id. at 830. A contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating [an] interpretation thereof, and making findings." Magallanes v. Bowen, 881 F. 2d 747, 751 (9th Cir. 1989) (citation omitted).

Analysis

**1. Treating Psychiatrist Dr. Javeed**

The ALJ found Dr. Javeed to be plaintiff's treating psychiatrist, and noted the more restrictive findings from a November 2017 "Medical Impairment Questionnaire." (AT 684, citing AT 1343-48.) Relevant here, Dr. Javeed believed that due to plaintiff's mental impairments, she would be absent more than three times a month; would have poor to no ability in maintaining regular attendance and being punctual; would have difficulty working in coordination, accepting instruction, responding appropriately to criticism from supervisors, getting along with coworkers or peers, and dealing with normal work stress; would have a fair ability to do semiskilled or skilled work; would have moderate restrictions in activities of daily living and maintaining social functioning; and would have frequent deficiencies of concentration, persistence, and pace. (See Id.) The ALJ assigned Dr. Javeed's opinion little weight as both largely based on subjective complaints and inconsistent with the medical evidence of record, plaintiff's daily activities, and her noncompliance with medications and doctor appointments. (Id.)

As Dr. Javeed's findings in the Questionnaire appear inconsistent with other medical records and the findings of Dr. Stenbeck, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Javeed's opinions. Lester, 81 F. 3d at 831. Despite the court's agreement with plaintiff that some of the rationale given by the ALJ does not suffice, the ALJ's findings of inconsistency with the medical record and of reliance on plaintiff's subjective symptoms suffice as specific and legitimate reasons.

Primarily, the ALJ adequately summarized Dr. Stenbeck's findings and opinions, which granted plaintiff some ability to work despite her mental impairments. (AT 684; see also Section A, above.) Dr. Javeed's restrictions conflict with Dr. Stenbeck's, and the ALJ was within her right to weigh these two medical opinions and resolve these conflicts. Edlund, 253 F. 3d at 1156. True the ALJ did not specifically note Dr. Stenbeck's findings in the specific paragraph discussing Dr. Javeed's report, but the ALJ's thorough discussion of the medical evidence in the

RFC section, and her assigning of "great weight" to Dr. Stenbeck's findings, makes clear the ALJ's path here. See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned."). The ALJ noted Dr. Stenbeck's review of "the complete documentary record," as well as her "detailed explanation with references to the evidence in the record to support [her] opinion." (AT 684.) The ALJ clearly found this examination to be a more-reliable source than Dr. Javeed's check-box findings in Exhibit C22F. See Crane v. Shalala, 76 F.3d 251, 253(9th Cir. 1996) (finding that opinions on a check-box form or form reports which do not contain significant explanation of the basis for the conclusions may be accorded little or no weight).

Further, the ALJ discounted Dr. Javeed's opinion in part because it was "largely based on subjective complaints." A review of Dr. Javeed's November 2017 report supports the ALJ's synopsis here, as a sizeable portion of Dr. Javeed's handwritten notes (of which there are few) are simply the doctor's recording of plaintiff's symptom complaints. (See AT 1344-45.) An ALJ may disregard a physician's opinion of disability where "premised to a large extent upon the claimant's own accounts of his symptoms and limitations," so long as "those complaints have been properly discounted." Buck, 869 F.3d at 1049. As discussed below (see Section C), the ALJ properly discounted the severity and intensity of plaintiff's symptom complaints, and so was authorized to similarly discount those portions of Dr. Javeed's report based on her symptom statements. See, e.g., Hoyt v. Colvin, 607 F. App'x 692 (9th Cir. 2015) (affirming district court's finding of no error in ALJ's discounting of treating physician, where doctor's opinions "were based on check-box forms, and they were predicated on the self-reporting of [claimant], who the ALJ determined was not credible."). While true that "psychiatric evaluations may appear subjective," and diagnoses "will always depend in part on the patient's self-reports," Buck, 869 F.3d at 1049, the combination of plaintiff's discredited subjective reports and the inconsistencies between the findings of Dr. Stenbeck and Dr. Javeed forestalls plaintiff's call for a finding of error on this point.

For these reasons, the ALJ did not err failing to provide specific and legitimate reasons for

discounting Dr. Javeed's more-restrictive recommendations based on plaintiff's mental limitations. Magallanes, 881 F. 2d at 751.

**2. Examining Physician Dr. Sharma**

The ALJ assigned "less weight" to the October 13, 2017 opinion of a state-agency consultative examiner Dr. Sharma, and plaintiff argues the reasons given for this rejection are not legitimate. (AT 683.) Relevantly, Dr. Sharma expressed that plaintiff should be limited to two hours of standing and walking, which contrasts with the ALJ's assigned RFC of "standing and walking in combination for six hours out of an eight-hour day." (AT 681.) The ALJ assigned less weight to Dr. Sharma's opinion, however, due to an absence of any treatment for back or neck pain, as well as an inconsistency between his findings of "bilateral knee pain due to degenerative disc disease" and an x-ray of plaintiff's knee taken a week later. (See AT 1501.) The x-ray found both knees "intact and well aligned; no fracture or dislocation is seen; the joint spaces are preserved; no abnormal soft tissue densities; no joint effusions." (Id.) The impression from the radiologist was that both knees were "unremarkable." (Id.)

In formulating plaintiff's RFC to allow for six hours of standing and walking, the ALJ relied on the opinions of the two state-agency medical consultants, as well as the "longitudinal evidence of record . . . ." (AT 683.) Thus, the question is whether the ALJ's proffered rationale for discounting Dr. Sharma is specific and legitimate. Lester, 81 F. 3d at 830. The undersigned finds the ALJ's proffered reasons to be so. The ALJ's observation that the medical evidence of record shows no treatment for back or neck pain is accurate. Plaintiff presented records from 2012-13 showing that certain lumbar tests were performed (AT 476-77), submitted records showing two chiropractor visits in 2014 (AT 04-08), and in 2017 submitted to an x-ray for her knees (AT 1501). Beyond that, the record was devoid of treatment records for her physical impairment, which she generally described as right side pain and numbness. In fact, after plaintiff requested a report from one of her rehab physicians, the doctor stated her belief that plaintiff's issues were mental in nature (AT 1423.) Thus, the ALJ was left to reconcile the inconsistencies between exam findings from one physician and the findings and sparse evidence of physical impairments on the other. See, e.g., Denson v. Colvin, 2014 WL 5825123, at *11 (D.

Nev. Nov. 7, 2014) (rejecting "failure to set forth specific and legitimate" claim where ALJ rejected physician's more restrictive findings regarding back pain as based on subjective symptom statements, mild degenerative changes, and questionable link between conditions and allegations of pain).

Plaintiff claims that the findings in the record, as well as those of Magistrate Judge Claire expressed in her 2017 order, indicate the "degenerative nature of plaintiff's back ailment." (ECF No. 22 at 7, quoting Gillit, 2018 WL 4538274 at *7.) Plaintiff contends the change in Dr. Sharma's opinion between 2014, finding plaintiff able to perform medium work, and his 2017 sedentary findings is consistent with this degenerative nature and Magistrate Judge Claire's ruling. (Cf. AT 590-95 with AT 1329-32.) However, the ALJ acknowledges plaintiff's decline, assigning less weight to the 2014 opinion "because the evidence of record supports greater exertional limitations even at that earlier time." (AT 684.) The fact that the ALJ did not find plaintiff's condition as severe as Dr. Sharma's 2017 exam is a matter of inconsistency, which is within the ALJ's authority to resolve — which the ALJ did by reviewing what sparse medical evidence existed. Tommasetti, 533 F.3d at 1038 (the court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation.").

**C. The ALJ properly identified and rejected plaintiff's subjective symptom testimony.**

Plaintiff's final point of error concerns the ALJ's failure to provide clear and convincing reasons to discount plaintiff's subjective symptom testimony. Plaintiff asserts the ALJ only restated a list of her alleged impairments, and relied on "mundane activities of daily living" without explaining how they discounted her symptoms.

Legal Standard

A claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a). If an ALJ was required to believe every allegation of pain or impairment, disability benefits would run afoul of the Social Security Act and its purpose. See Treichler v. Comm'r of SSA, 775 F.3d 1090, 1106 (9th Cir. 2014). In evaluating the extent to which an ALJ must credit the claimant's report of their symptoms, the Ninth Circuit has set forth the following two-step analysis:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.
>
> If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

The ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015) (quoting Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991)). Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony include: the effectiveness of or noncompliance with a prescribed regime of medical treatment, prescription of conservative treatment, inconsistencies between a claimant's testimony and conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds for an ALJ to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R § 404.1529(c)(2)).

Analysis

Plaintiff first disputes that the ALJ described her subjective symptom allegations, arguing that the ALJ instead merely "sets out a list of alleged impairments." (ECF No. 16 at 17.) After detailing plaintiff's RFC, the ALJ noted that plaintiff suffered from "anxiety, depression,

migraines, insomnia, and right side pain." (AT 681.) The remainder of the RFC discussion is dedicated to the medical and opinion evidence and the ALJ's findings thereon. (AT 681-85.) The court finds that, while true the ALJ did not describe plaintiff's testimony in greater detail, this list is an accurate summation of plaintiff's testimony. (See AT 724-27 (testimony regarding anxiety); 719-21 (testimony regarding migraines); 717 (testimony regarding insomnia); 709-15 and 721-24 (testimony regarding pain along plaintiff's right side).) The ALJ's summary at AT 681 is "sufficiently specific" as to allow the undersigned to analyze whether she properly discredited plaintiff's testimony under the proffered rationales. Brown-Hunter, 806 F.3d at 493.

Reviewing the ALJ's rationale, the undersigned finds the combination of plaintiff's sporadic treatment, intent to work, and lack of supporting medical evidence provide clear and convincing reasons for the ALJ's discounting of plaintiff's "intensity, persistence, and limiting effects" statements. (AT 683.) The ALJ cited to multiple instances of plaintiff's noncompliance with her medical appointments and prescription regimen. (See AT 682.) Concerning the prescriptions, plaintiff claims this is explained by Dr. Javeed's treatment notes that plaintiff discontinued the antidepressants and antipsychotics due to side effects. (AT 1344.) However, this brief note is inconsistent with Dr. Stenbeck's general assessment that plaintiff's prognosis was "fair with comprehensive mental health services." (AT 1341.) The ALJ also notes in the decision numerous other inconsistencies in the record which will not be repeated here. (AT 681-85.) Finally, the ALJ noted plaintiff's intent to continue working past her onset date. (AT 682.) These findings, alongside the undisputed failure seek out and consistently maintain health services, provides sufficient reasoning to support the ALJ's rejection of plaintiff's symptom testimony. Lingenfelter, 504 F.3d at 1040; see also Oliver v. Comm'r, 2020 WL 977892, at *13 (E.D. Cal. Feb. 28, 2020) (finding intent to work and medical evidence supported discounting of plaintiff's symptom testimony); Alvarado v. Comm'r, 2017 WL 3438767, at *11 (E.D. Cal. Aug. 10, 2017) (finding clear and convincing reasons to discredit plaintiff's testimony supported by substantial evidence due to inconsistencies in the medical evidence and treatment non-compliance).

////

## V. CONCLUSION

Having resolved plaintiff's claims of error, the court finds that the ALJ's decision supported by substantial evidence in the record as a whole. Buck, 869 F.3d at 1048. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16) is DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is GRANTED;
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner; and
4. The Clerk of Court shall CLOSE this case.

Dated: August 26, 2020

Kendall J. Newman
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

gill.1542